# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME PASTORIZA-VALERIO,<br><br>                     Petitioner,<br>   vs.<br><br>UNITED STATES OF AMERICA,<br><br>                     Respondent. | CASE NO. 06CV1079-LAB<br>[Related to 04CR3066-LAB]<br><br>ORDER DENYING § 2255 MOTION<br><br>[Docket No. 39] |

Petitioner Jaime Patoriza-Valerio filed with this court a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. The court summarily denies the motion without requiring a response from the United States because, by the express terms of the plea agreement, Petitioner waived his right to collaterally attack his conviction or sentence.

A. Background

Petitioner was represented by counsel throughout his criminal case. In December 2004, Petitioner was indicted on two counts: (1) knowingly and intentionally importing "500 grams and more of a mixture and substance containing a detectable amount of methamphetamine," and (2) knowingly and intentionally possessing the same with intent to distribute it. 21 U.S.C. §§ 841(a)(1), 952, & 960. Both crimes allegedly occurred in November 2004 and involved a quantity of 1.48 kilograms. He appeared before Magistrate Judge William McCurine, Jr., and entered a not guilty plea.

His attorney, Michael Messina, filed a discovery motion, which the court granted.

/ / /

/ / /

The government offered Petitioner a plea with a base offense level of 34, which would have resulted in a sentence around 85 months, but Petitioner rejected the offer. *See* Tr. (Aug. 1, 2005) at 4, 7-8 (hereinafter "Sentencing Tr.").

In February 2005, the government filed a superceding indictment that alleged four counts. As to the two original November transactions, the superceding indictment changed the allegation regarding the narcotics by substituting an allegation of "50 grams and more of methamphetamine (actual)" for the 1.48 kilogram-mixture previously alleged. The two new charges included a conspiracy to distribute count involving "50 grams and more of methamphetamine (actual)" and another and earlier distribution count involving 1276 grams of the same narcotic in October 2004. 21 U.S.C. §§ 841(a)(1) & 846.

Following his arraignment on the superceding indictment, Petitioner substituted a new attorney, George Siddell. Unlike his prior court-appointed attorney, Siddell was retained.

Thereafter, Petitioner entered into a written plea agreement (which he initialed at the bottom of each page and signed along with his new attorney). The terms of the plea agreement provided that Petitioner would enter a guilty plea to Count 2, which involved the distribution of 1276 grams of methamphetamine on October 26, 2004; and in exchange, the government agreed to dismiss the three other counts. *Plea Agreement* at 1. As part of the factual basis, Petitioner further admitted that he had possessed 1196 grams of methamphetamine on November 18, 2004 and that he intended to deliver that amount to another person. *Id.* at 2. Although Count 2 carried a mandatory minimum sentence of 10 years, the government agreed to recommend a base offense level of 38; a 2-level safety value reduction – which then allowed Petitioner to request a sentence below the mandatory minimum; and a 3 level adjustment for acceptance of responsibility. *Id.* at 2 & 5. Petitioner agreed not to seek any other sentencing adjustments; however, he retained the right to request downward departures that could further reduce his sentence. *Id.* at 7. The written agreement contained this provision regarding the length of custody:

> The parties agree that the Government will recommend that defendant be sentenced to the **low end** of the advisory guideline range found by the Court, unless the Defendant's Guideline range is below 10 years and the sentence is limited by the 10-year minimum mandatory sentence pursuant to 21 U.S.C. § 841, in which case the Government will recommend the mandatory minimum sentence be imposed. If the Court adopts an offense level or downward adjustment or departure below the

> Government's recommendations in this Agreement, the Government will recommend a sentence as near as possible to what the sentence would have been if the Government's recommendations had been followed.

*Id.* at 8. The Plea Agreement further provided this provision, which is critical to the § 2255 motion:

> In exchange for the Government's concessions in this plea agreement, <u>defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and sentence</u>, including any restitution order, unless the court imposes a custodial sentence greater than the high end of the guideline range (or statutory mandatory minimum term, if applicable) recommended by the Government pursuant to this plea agreement at the time of sentencing. If the custodial sentence is greater than the high end of that range, defendant may appeal, but the Government will be free to support on appeal the sentence actually imposed.

*Id.* (emphasis added).

Magistrate Judge McCurrine, upon Petitioner's consent, presided over the change of plea hearing. During that hearing, Petitioner confirmed that he had discussed the plea agreement with counsel and he admitted the truth of the facts concerning his intent to distribute 1276 grams of methamphetamine in October and, for purposes of relevant conduct, the additional 1196 grams in November. Tr. (May 10, 2005) at 4, 7-8 (hereinafter "Plea Tr.") When specifically asked, Petitioner agreed that the plea agreement waived his right to bring a collateral attack to challenge the validity of his conviction or sentence. *Id.* at 13-15. Petitioner assured the court that his attorney had explained the terms of the plea agreement to Petitioner in Spanish, and then with an interpreter to answer his specific questions. *Id.* at 16-17; *see id.* at 20. Magistrate Judge McCurine issued written findings and recommended that this court accept the voluntary and knowing guilty plea. Petitioner did not object to the findings. The court accepted the plea on Count 2. Sentencing Tr. at 2-3.

Petitioner's attorney filed a sentencing brief stating agreement with the probation department's calculation of the proposed sentence in the presentence report, including a criminal history category of I. Counsel noted that he expected a downward departure for cooperation would bring the sentence below the 10-year mandatory minimum. At the sentencing hearing, the attorney raised a concern that Petitioner had been offered a deal with an 85 month sentence, but he had rejected it because he "didn't think it was a good enough offer," so he hired Siddell to represent him, and now faced a sentence of 108 months. *Id.* at 4. The court observed that had Petitioner gone to trial, the sentencing guidelines recommended up to 168 months in custody, and that absent the plea agreement, the court would have imposed a sentence between 140 and 150 months. *Id.* at 6 & 10. The government's recommendation

was in accord with the plea agreement. *Id.* at 8. Ultimately, the court sentenced Petitioner to 108 months in custody as recommended by the government.

Petitioner lists several grounds for relief in his § 2255 motion and his memorandum explains and discusses multiple errors concerning the calculation of his sentence, vindictive prosecution, and incompetent attorneys.[1] The record, however, conclusively establishes that Petitioner waived his right to collaterally attack his conviction and sentence. Therefore, the court summarily denies the § 2255 motion without a response from the government or an evidentiary hearing. 28 U.S.C. § 2255; Rule 4 of the Rules Governing Section 2255 Proceedings in the United States District Court; *United States v. Keller*, 902 F.2d 1391, 1395 (9th Cir. 1990); *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1985) (per curiam).

B. <u>Petitioner Waived Each of the Claims Asserted in this § 2255 Motion</u>

A plea agreement that waives the right to attack the sentence and conviction in a collateral proceeding (*i.e.*, a § 2255 motion) is enforceable. *United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990); *United States v. Johnson*, 67 F.3d 200, 202 & nn.4 & 6 (9th Cir. 1995). No "error" occurs when a right is waiveable and criminal defendant in fact knowingly and voluntarily waives it. *United States v. Olano*, 507 U.S. 725, 732-33 (1993). Here, the record establishes that Petitioner's decision to enter a guilty plea pursuant to the written agreement with the government was knowing and voluntary. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985). Petitioner stood beside his attorney in open court and swore under oath that he was in fact guilty of possessing, with the intent to distribute, nearly 2,500 grams of methamphetamine. Petitioner assured the Magistrate Judge that he had discussed his case with his attorney and he understood the plea bargain, including the possible sentence. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

/ / /

/ / /

---

[1] In August 2005, Petitioner filed a *pro se* notice of appeal of the conviction and sentence. While that appeal was pending, Petitioner filed his first timely § 2255 motion. This court dismissed it without prejudice. *United States v. LaFromboise*, 427 F.3d 680 (9th Cir. 2005). Shortly thereafter, Petitioner voluntarily dismissed his appeal and refiled this timely § 2255 motion.

In passing, Petitioner makes two allegations that could be construed as challenges to the voluntary and knowing nature of his guilty plea but both are wholly unsupported by the record.[2] *Washington v. Lampert*, 422 F.3d 864, 870-71 (9th Cir. 2005) (waiver of right to collateral review was not enforceable with respect to petitioner's ineffective assistance of counsel claim challenging the validity of the waiver itself). Petitioner states that his second attorney did not explain "what the consequences of his plea would be" and that he had a conflict of interest because his fees were paid by the owner of the methamphetamine. Br. at 4 & 5.

These conclusory statements do not state a claim *even if* a third party paid the retainer. *Schaflander*, 743 F.2d at 717; *see United States v. Wells*, 394 F.3d 725, 732-34 (9th Cir. 2005) (defendant must demonstrate an actual conflict of interest adversely affected his attorney's performance – "as opposed to a mere theoretical division of loyalties"). In open court and under oath, Petitioner said he was satisfied with the attorney's performance; acknowledged that he had full discussions about the decision to enter a guilty plea; and understood the consequences of his decision – even if the sentence was greater than he expected. *E.g.,* Plea Tr. at 13 & 17. His attorney discussed the "frank and brutal" advice he gave Petitioner about the wisdom of accepting the government's offer. Sentencing Tr. at 4; *see also* Plea Tr. at 16 (attorney states he reviewed the plea agreement with Petitioner in Spanish, and "I later went back with an interpreter just to verify that there was not going to be any issue and we answered his questions. He had some questions that were lingering about the minimum mandatory and the guideline range and those were the specific areas of concern he had, and we discussed those at length."). When given an opportunity to address the court, Petitioner did not express any concern with his attorney's performance. Sentencing Tr. at 7. The fact that he "cooperated with the government" and "announced his willingness to cooperate yet further if given the opportunity" belies the conflict charge. *See Wood v. Georgia*, 450 U.S. 261, 268-69 (1981) (one risk is that lawyer will prevent defendant from offering testimony against his employer); *Quintero v. United States*, 33 F.3d 1133, 1136-37 (9th Cir. 1994). The court stated its opinion then (and confirms

---

[2] Furthermore, the failure to challenge whether the plea was knowing and voluntary in a direct appeal waives the claim for purposes of a collateral proceeding. *Bousley v. United States*, 523 U.S. 614, 621 (1998) ("even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review").

it now) that the plea agreement significantly benefitted Petitioner because without it he faced a lengthy sentence for "the multiple offenses that he has committed here in dealing with the highly volatile narcotic methamphetamine."  Sentencing Tr. at 9; *see also* Plea Tr. at 16 (attorney stated: "The government has quite compelling evidence against him, including photographs of deliveries.").  Other than wanting a sentence lower than the one he freely negotiated with the government, Petitioner has not identified any adverse affect that would constitute a cognizable Sixth Amendment claim.  *Wells*, 394 F.3d at 733-34.

None of Petitioner's other § 2255 claims focus on the nature of the attorney's advice regarding accepting the plea agreement (with the waiver provision) or the voluntariness of his guilty plea. *Washington*, 422 F.3d at 870-71 (waiver of right to collateral review was not enforceable with respect to petitioner's ineffective assistance of counsel claim challenging the validity of the waiver itself).  The record does not contain any indication that Petitioner's decision to plead guilty to one distribution count in exchange for significant government concessions (including dismissing three counts and avoiding the mandatory minimum) was anything other than knowing, intelligent, and voluntary. *United States v. Jeronimo*, 398 F.3d 1149, 1157 (9th Cir. 2005) (waiver was valid and enforceable because record failed to demonstrate that it was not knowingly and voluntarily made).

Specifically, Petitioner claims to have been the victim of vindictive prosecution because the government filed a superceding indictment that modified the quantity of narcotics and added charges. The court holds that this unsupported claim has been waived.[3]  The express terms of the plea agreement allowed the sentence to be calculated based upon the amount of methamphetamine in the October *and* November transactions when the government dismissed the three other counts and recommended  the negotiated sentence (for example, agreeing that Petitioner qualified for the safety

---

[3] *Cf. Blackledge*, 417 U.S. at 28-29 (guilty plea does not bar vindictive prosecution claim). "To establish a prima facie case of prosecutorial vindictiveness, a defendant must show either direct evidence of actual vindictiveness or facts that warrant an appearance of such." *United States v. Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1995). "During plea negotiations, however, prosecutors may threaten additional charges and may carry through on this threat.  This action alone does not violate a defendant's due process rights, nor does it create a presumption of vindictiveness." *United States v. Nousfar*, 78 F.3d 1442, 1446 (9th Cir. 1996); *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982); *accord United States v. Goodwin*, 457 U.S. 368, 376-82 & n.14 (1982) (prosecutors routinely uncover additional information in the pretrial stages and that investigation may warrant modifying charges).

1  valve departure which allowed a sentence below the 10 year mandatory minimum term).  Because the
2  sentence imposed complied with the negotiated term in the written agreement, the court finds that
3  Petitioner has waived his right to attack his conviction on facts relating to the government's decision
4  to obtain a superceding indictment.

5        Petitioner next attempts to cast several sentencing claims as ineffective assistance of counsel
6  claims.  The court finds that these are fundamentally allegations about the calculation of his sentence,
7  and were therefore waived by his knowing and voluntary plea bargain.  *United States v. Djelevic*, 161
8  F.3d 104, 106-07 (2d Cir. 1998) (per curiam) (guideline calculation, even when framed as ineffective
9  assistance at sentencing, is foreclosed by plain language of waiver in plea agreement); *accord Jones*
10 *v. United States*, 167 F.3d 1142 (7th Cir. 1999) (§ 2255 challenge to attorney's performance with
11 regard to sentencing was waived by plea agreement); *Williams v. United States*, 396 F.3d 1340 (11th
12 Cir. 2005) (same).  A defendant may not "dress up" a claim as a Sixth Amendment violation when he
13 "in reality is challenging the correctness of his sentence." *Djelevic*, 161 F.3d at 107.  The court agrees
14 with the Second Circuit's observation that allowing "a claim of ineffective assistance of counsel at
15 sentencing as a means of circumventing plain language in a waiver agreement" would render the
16 waiver "meaningless" *Id.*  "[T]he Government's motivating purpose, decreased effort and expense
17 of protracted litigation is not well-met if the defendant is permitted to appeal [or collaterally attack]
18 that to which he has agreed." *Id.*

19       This rule bars Petitioner's claims that his sentence should have been calculated based upon the
20 1.48 kilogram substance that had been alleged in the original indictment; that the attorney failed to
21 object to the use of the November methamphetamine distribution charge as relevant conduct and the
22 use of a base offense level that reflected the substances involved in both the October and November
23 crimes; and the attorney should have sought a departure for minimal role or extraordinary
24 circumstances and should have "vigorously argued" for a 57-month sentence because he was a "mule,"
25 had no knowledge of the amount or type of narcotic, and participated only to relieve his "tremendous
26 financial responsibilities" to his family.  Br. at 2-3.
27 / / /
28 / / /

1   Petitioner further complains that his first attorney failed to promptly negotiate a guilty plea, the
2   government became annoyed, and obtained a superceding indictment with more serious charges[4]; and
3   that his second attorney failed to object when the government filed the "unnecessary and vindictive"
4   superceding indictment, "withdrew the motion for discovery so the strength of the government's case
5   was never known"; "did not keep him informed in Spanish what the status of the case was," and failed
6   to appear at the presentence interview.  Mo. at 5, ¶ 12(C) & Br. at 4.  The court finds that Petitioner
7   waived these purported ineffective assistance claims because they are not directed to the voluntary or
8   intelligent nature of his decision to enter a guilty plea.  Moreover, they are flatly contradicted by the
9   record.  For example, the court granted the discovery motion filed by the first attorney, thus, the second
10  motion was duplicative and the second attorney discussed the case with Petitioner in Spanish and
11  returned with an interpreter to avoid any possible confusion.

12  In sum, Petitioner is bound by his plea agreement not to challenge his conviction or sentence.
13  The record conclusively establishes that the government fulfilled its promises and Petitioner received
14  the benefits of the plea agreement.  The court will not deprive the government of the benefit its
15  bargain.  In any event, Petitioner would be unable to demonstrate prejudice from his attorney's failure
16  to raise arguments that had been knowingly and voluntarily waived in the process of plea bargaining
17  with the government for benefits that were favorable to his client.  *United States v. Wilkes*, 20 F.3d
18  651, 653 (5th Cir. 1994).  Waivers are standard in plea agreements in this district to defendants in
19  similar circumstances, and if the attorney had insisted that it be removed, the government easily could
20  have rescinded its plea offer and Petitioner's sentence would have been more severe than the 108
21  months he received.

22  / / /
23  / / /
24

---

25  [4] Moreover, by entering a voluntary and knowing plea of guilty, Petitioner waived this claim
26  because it alleges a denial of constitutional rights prior to his entry of a guilty plea.  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  "When a criminal defendant has solemnly admitted in open
27  court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred *prior to the entry
28  of the guilty plea*. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759, 771 (1970)]."  *Id.* (emphasis added).

Conclusion

Having reviewed the record and the applicable law, the court denies Petitioner's § 2255 motion. The Clerk shall terminate the civil action.

**IT IS SO ORDERED**.

DATED: January 9, 2009

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge